UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jacquet L. Wilder as parent and natural guardian of NAM – a minor child, ) ) ) Plaintiff, ) ) ) vs. ) ) Carolyn W. Colvin, Acting Commissioner ) of Social Security Administration, ) ) Defendant. ) | C/A No. 5:13-3431-JMC-KDW REPORT AND RECOMMENDATION |

This social security matter is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff Jacquet L. Wilder ("Ms. Wilder") brings this action on behalf of her minor daughter, NAM, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI"). References to "Plaintiff" herein refer to NAM. The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

    A.      Procedural History

In September 2010, Ms. Wilder applied on behalf of NAM for SSI alleging a disability onset date of January 1, 2009. Tr. 95-110. In her form disability report, the child's disabling condition was described as: "Behavioral problems-she just wants to be in control of everything." Tr. 140. Her application was denied initially and upon reconsideration, Tr. 71-76, and Ms.

Wilder requested a hearing, Tr. 84-87. An Administrative Law Judge ("ALJ") conducted a hearing on July 26, 2012, and Ms. Wilder chose to proceed without counsel. Tr. 51-70. The ALJ issued an unfavorable decision on August 30, 2012. Tr. 12-23. The Appeals Council denied Plaintiff's request for review on October 22, 2013, making the ALJ's decision the final decision for purposes of judicial review. Tr. 1-6. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on December 9, 2013. ECF No. 1.

     B.     Plaintiff's Background and Medical History

          1.     Background

Plaintiff was 13 years old on the date her application for SSI was filed and 15 years old on the date of the hearing. Tr. 55, 95. As of the date of the hearing, Plaintiff was about to start eighth grade and lived with her mother, her mother's fiancé, an older sister, and younger brother. Tr. 57, 60.

          2.     Medical History and School Records

On January 27, 2011, medical consultant ("MC") Xanthia Harkness completed a Childhood Disability Evaluation Form on Plaintiff in an initial determination. Tr. 383-88. She noted Plaintiff's impairments of Attention Deficit Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD"), and found that these impairments or combination of impairments were severe but did not meet, medically equal, or functionally equal the Listings. Tr. 383. In the area of functional equivalence MC Harkness found Plaintiff had no limitation in "Acquiring and Using Information," less than marked limitation in "Interacting and Relating With Others," and no limitations in the areas of "Moving About and Manipulating Objects," "Caring For Yourself," and "Health and Physical Well-Being." Tr. 385-86.

MCs Robbie Ronin and Judith Von on reconsideration completed a Childhood Disability Evaluation Form on Plaintiff in July 2011. Tr. 398-403. Again, Plaintiff was noted as having the severe impairments of ODD and ADHD, but the impairments did not meet, medically equal, or functionally equal the Listings. Tr. 398. Plaintiff was found to have no limitation in "Acquiring and Using Information," less-than-marked limitations in the areas of "Attending and Completing Tasks" and "Interacting and Relating With Others," and no limitations in the areas "Moving About and Manipulating Objects," "Caring For Yourself," and "Health and Physical Well-Being." Tr. 400-01. The Explanation of Findings section of the form included the following comments:

> [R]ationale: no significant problems w/learning; no special ed. [Claimant] has a [history] of beh[avioral] prob[lems] but overall social limits appear mild/moderate per MHC [treatment] records. There are no significant w/self-care. Good response to [prescription] regarding ADHD. Claimant's statements regarding the descriptions of impairments appear to be partially credible. There do appear to be psych impairments r/t ODD features and ADHD under good control; but the levels of the impairments, per [treatment] records, indicate the impairments are not marked in any mental domain.

Tr. 403.

Plaintiff underwent a clinical assessment on March 20, 2012 at the South Carolina Department of Mental Health. Tr. 259-64. Plaintiff was found to endorse "nearly every symptom" of ODD. Tr. 264. Plaintiff was also found to endorse nearly all symptoms of ADHD "from both the inattentive and hyperactive-impulsive domains." *Id.* The mental health specialist noted:

> The client requires both individual and family therapy to target improved behavior. The client's oppositional [symptoms] are placing her at increased risk for expulsion and DJJ placement, and [her] ADHD [symptoms] are likely contributing to her repeating the 7th grade. The client will be evaluated for and prescribed medications to help with these [symptoms] if necessary. Individual [treatment] will target improved thinking and relationships with others. Family

3

>therapy should target improved structure, communication, and supervision from parents.

*Id.*

On February 8, February 13, and March 2, 2012, Plaintiff underwent a psychological evaluation by the school psychologist to consider her eligibility of special education services. Tr. 274-82. The psychologist determined that Plaintiff met the "eligibility criteria for consideration of special education and related services as a student with a Learning Disability." Tr. 281. Plaintiff did not meet criteria as a student with an emotional disability. *Id.*

On June 1, 2012, an Individualized Education Program ("IEP") meeting was held. Tr. 305-18. Based on Plaintiff's disability, the IEP included the following accommodations to the general curriculum: small group setting for tests and quizzes; use of a calculator when the skill (addition, subtraction, multiplication, division) is not being tested; reminders to ask for teacher assistance or clarification allowing the teacher response time; and when Plaintiff is visibly upset, she will be given time with a designated person to calm down and explain her needs/requests. Tr. 309. The IEP noted that Plaintiff's level of performance did not require modifications in the general curriculum. *Id.* However, Plaintiff would also receive special education services through a tutorial resource model and receive counseling through the on-campus mental health counselor. Tr. 311.

   C. The Administrative Proceedings

Plaintiff, along with her mother, appeared via teleconference for an administrative hearing on July 26, 2012. Tr. 51-70. They were informed of their right to be represented by counsel but decided to proceed without a representative. Tr. 52-53.

      1.      Plaintiff's Testimony

Plaintiff testified that she was 15 years old and was not currently taking any medicine. Tr. 55-56. She stated she sometimes takes two medications when she is in school to help her "calm down." Tr. 57. She last took the medications "not too long before school got out." *Id.* Plaintiff testified she was going to be in the eighth grade and had repeated kindergarten and the seventh grade. *Id.* Plaintiff stated she repeated the seventh grade because she was getting into too much trouble, did not take school seriously, and could not stay focused. Tr. 58. Plaintiff testified she was "ready to go back to school" and liked science class and gym. *Id.* Plaintiff stated that she liked being with her friends at school and planned to try out for the basketball team. *Id.* Plaintiff stated she got along well with the other students but got in trouble with teachers and administrators. Tr. 59. Plaintiff stated she was never home-schooled.[1] *Id.* Plaintiff testified that in the last school year she was suspended a lot and would go home and have in-school suspension ("ISS") for a couple of days. Tr. 59-60.

Plaintiff testified she lived with her mother, her mother's fiancé, and her brother who is 14, and sister who is 18. Tr. 60. She stated that she and her brother argue but they get along better than she does with her older sister. *Id.* Plaintiff stated they lived in an apartment and she shared a room with her sister. *Id.* She testified she was able to care for her personal hygiene, and did household chores that included washing dishes, sometimes cleaning the bathroom, and keeping her room clean. Tr. 61. Plaintiff stated she did not do laundry but she knew how to do it. *Id.* Plaintiff testified that she liked to swim, she did cheerleading, and she liked to run and play basketball. *Id.* Plaintiff stated that she got along with her mother but "just sometimes [they] disagree about stuff." *Id.*

---

[1] On April 14, 2011, Plaintiff's mother completed a Teacher Questionnaire regarding Plaintiff's functioning and indicated that because Plaintiff was "on suspension every other day in public school" she was now being home-schooled. Tr. 223-30.

2.      Witnesses Testimony

Plaintiff's mother, Ms. Wilder, testified that she agreed with Plaintiff's testimony. Tr. 62. She stated that she had to stop working so that she could "go and be supportive of her education at school" but Plaintiff was "doing much better now since [she] put [her] all into trying to get [Plaintiff] through school." *Id.*  Ms. Wilder stated that she knew since first grade that Plaintiff had a problem. *Id.* She testified that Plaintiff was "real close" to her grandmother and went to visit her in Georgia for a few weeks over the summer. Tr. 63.  Ms. Wilder stated that Plaintiff's worst subject in school was math, and her best were science and reading. *Id.* She testified that Plaintiff's main problem was focusing and she was being accommodated with a smaller group setting, allowed to use a calculator for match, and she was allowed to ask extra questions. Tr. 64. Ms. Wilder also testified that Plaintiff took both regular and special education classes. *Id.* She stated Plaintiff was tested at the end of the school year and diagnosed with ODD.  *Id.* While in school she saw an on-site counselor as much as needed, but while school was out she saw a counselor once a month. Tr. 65. Ms. Wilder testified that when Plaintiff had problems at school she would be sent to the counselor to try to resolve the conflict. Tr. 65. If the issue was resolved Plaintiff would return to class—if not, she was sent home. *Id.*

Ms. Wilder testified that Plaintiff had friends, she liked to read, and listen to music. Tr. 66. She stated that Plaintiff struggled with following rules, and would "drop off track" with household chores and homework unless Ms. Wilder constantly "stay[ed] on her." *Id.* She stated that Plaintiff did not take instructions well and got frustrated doing homework. Tr. 67. Ms. Wilder testified that Plaintiff responds to the medication but her doctor recently concluded that Plaintiff needs to change the ADHD medication before school starts. Tr. 67-68. Ms. Wilder testified that Plaintiff likes to go to the mall, play at the park, go to church, and spend the night at

a friend's house. Tr. 69. She stated that Plaintiff is "a very sweet girl overall" and if she got her behavior together she would be fine. *Id.*

  D. The ALJ's Findings

In her August 30, 2012 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant was born on May 8, 1997. Therefore, she was a school-age child on September 2, 2010, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since September 2, 2010, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD) and oppositional disorder (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since September 2, 2010, the date the application was filed (20 CFR 416.924(a)).

Tr. 15-23.

II. Discussion

  A. Legal Framework

    1. The Commissioner's Determination-of-Disability Process

For purposes of eligibility for children's disability benefits under the Act, an individual under age 18 will be considered disabled if he or she has a "medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional

7

limitations, and that can be expected to cause death or that has lasted or can be expected to last for not less than 12 months." 20 C.F.R. § 416.906; *see also* 42 U.S.C. § 1382c(a)(3)(C)(i).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations in adult disability matter and noting "need for efficiency" in considering disability claims). The Commissioner's regulations establish a three-part evaluation process: (1) determine whether the child is currently engaged in substantial gainful activity ("SGA"); (2) determine whether the child has a severe impairment or impairments; (3) determine whether the child's impairments meet, medically equal, or functionally equal any impairment found in the Listings. *See* 20 C.F.R. § 416.924, 20 C.F.R. pt. 404, subpt. P, app. 1.

In determining whether a claimant has engaged in SGA, the Commissioner uses the same rules for children under age 18 as she does for adults. 20 C.F.R. § 416.924(b). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, regardless of whether a profit is realized. 20 C.F.R. § 416.972(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 C.F.R. § 416.974; 20 C.F.R. § 416.975. If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable "severe" impairment or a combination of impairments that is "severe." For an individual who has not attained age 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. If the claimant does not have a medically determinable severe impairment(s), he is not disabled. 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, the analysis proceeds to the third step.

At step three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a Listed impairment, or that functionally equals one of the impairments found in the Listings. In making that determination, the Commissioner must consider the combined effect of all medically determinable impairments, even those that are not severe. 20 C.F.R. § 416.923; 20 C.F.R. § 416.924a(b)(4), and 20 C.F.R. § 416.926a(a), (c). If the claimant has an impairment or combination of impairments that meets, medically equals or functionally equals the Listings, and it has lasted or is expected to last for a continuous period of at least 12 months, he is presumed to be disabled. If not, the claimant is not disabled. 20 C.F.R. § 416.924(d). If he does not satisfy any of these three steps, he is not disabled. *See* 20 C.F.R. § 416.924(b)-(d).

In determining whether a claimant meets one of the impairments in the Listings, the Commissioner compares the symptoms, signs, and laboratory findings of an impairment, as shown in the medical evidence, with the medical criteria for the Listed impairment. "If a severe impairment is of the degree set forth in a Listing, and such impairment meets the twelve-month durational requirement ... then [the claimant] 'is conclusively presumed to be disabled and entitled to benefits.'" *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (quoting *Bowen v.*

*City of New York*, 476 U.S. 467, 470-71(1986)). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). It is not enough that the impairment have the diagnosis of a Listed impairment, the claimant must also have the findings shown in the Listing of that impairment. 20 C.F.R. § 416.925(d); *see Bowen v. Yuckert*, 482 U.S. 137, 146 & n. 5 (1987) (noting the claimant's burden to show that his impairment is presumptively disabling and to furnish medical evidence regarding his condition).

If the claimant's impairment or combination of impairments does not meet or medically equal the requirements of a Listing, the Commissioner will decide whether it results in limitations that functionally equal such requirements. *See* 20 C.F.R. § 416.926a(a). To assess functional equivalence, the Commissioner considers how the claimant functions in activities in terms of six domains, which are broad areas of functioning, intended to capture what a child can or cannot do. 20 C.F.R. § 416.926a(b)(1). These domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i) through (vi). To establish functional equivalence, the claimant must have a medically determinable impairment or combination of impairments that results either in "marked" limitations in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(b)(1). The Commissioner will find that a claimant has a "marked" limitation in a domain when his impairment or combination of impairments interferes seriously with his ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation also means a limitation is "more than moderate" but "less than extreme," and may arise when several activities or functions are limited, or when only

one is limited. *Id.* The Commissioner will find that the claimant has an "extreme" limitation in a domain when his impairment or combination of impairments interferes very seriously with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation also means a limitation is "more than marked," and may arise when one or more activities or functions are limited. *See id.*

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id., Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that

decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    B.    Analysis

Plaintiff asserts the ALJ committed reversible error in failing to find that the she has an impairment or combination of impairments that meets or medically equals Listings 12.0 or 112.0 for mental disorders. Pl.'s Br. 5, ECF No. 18. She asserts the decision does not adequately explain how none of her impairments meet or equal listing severity or how it affects her residual functional capacity. Pl.'s Br. 6. The Commissioner argues that the ALJ reasonably found that Plaintiff's impairments were not functionally equivalent in severity to any Listing, and that finding is supported by substantial evidence. Def.'s Br. 5, ECF No. 20.

The ALJ found that Plaintiff had the severe impairments of ADHD and oppositional disorder. However, the ALJ concluded that the impairments did not meet or equal the requirements of any section of the Listing of Impairments. Tr. 15. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. at 530. Plaintiff has not produced evidence that her impairments met the requirements of the Listings.

In determining Plaintiff was not disabled, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, and the statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible." Tr. 16. "Because [the ALJ] had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) (citing

*Tyler v. Weinberger*, 409 F. Supp. 776 (E.D.Va. 1976)). The ALJ focused on Plaintiff's testimony that she gets along with her friends at school, she takes medicine when she goes to school to calm her down, she was not taking medication during the summer, she is capable of taking care of personal needs and grooming, and she performs household chores. *Id.* The ALJ also noted Ms. Wilder's testimony that Plaintiff's main problem was focusing; but she had had friends, and she liked to read, shop, and listen to music. *Id.* The ALJ also noted Ms. Wilder's statement that Plaintiff "has responded to medication in the past and that the doctor is planning to change her medication when school starts." *Id.* If a symptom can be reasonably controlled by medication or treatment, it is not disabling. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

Plaintiff argues that the ALJ's finding of no limitation in the domain of acquiring and using information and in the domain of interacting or relating with others is incorrect and a "fair reading of all the evidence" shows Plaintiff had impairments resulting in marked limitations in two domains of an extreme limitation in one domain. Pl.'s Br. 5-6.

As required by the regulations, the ALJ considered whether Plaintiff's impairments functionally equaled the Listings, and found they did not. *See* 20 C.F.R. § 416.926a. In making that finding, the ALJ considered each of the six functional domains, concluding that Plaintiff's limitations were not marked in two domains or extreme in one domain. Tr. 17-23. The ALJ found Plaintiff had no limitations in acquiring and using information. Tr. 18. In support of this finding, the ALJ noted that there was "no evidence in the record that the claimant is limited in any way in this area." *Id.* The ALJ also noted that Ms. Wilder reported Plaintiff had "no problems understanding and using what she has learned." *Id.* (citing to Ex. 9E, Function Report dated Sept. 9, 2010 at Tr. 185-92). The ALJ found Plaintiff had less than marked limitations in

13

the domain of attending and completing tasks. Tr. 18-19. In support of this finding, the ALJ acknowledged reports of behavioral problems at home and school, and noted that although she did not meet the school criteria to be treated as a student with an emotional disability she was in special education classes part of the school day. Tr. 19. The ALJ also noted that Plaintiff was seeing a counselor to address her anger and attitude problems, that she was making progress, and that her symptoms were improving with medication. *Id.* The ALJ further noted she agreed with the State agency assessment finding less-than-marked limitation in this domain. *Id.* (citing to ex. 10F, Childhood Disability Evaluation Form dated July 15, 2011, Tr. 398-403). In the domain of interacting and relating with others, the ALJ found Plaintiff had no limitations while acknowledging the State agency assessments showed less than marked limitation in this domain. Tr. 19-20. In support of her finding, the ALJ again relied on a statement from Ms. Wilder reporting that Plaintiff "meets many people and is able to keep friends easily. She likes to be outside hanging out with her friends and she likes to get on Facebook." Tr. 20 (citing to Ex. 11F, Greenville County School's Confidential Psychological Evaluation Report, Tr. 405). The ALJ noted there were no reports of difficulties playing games or sports with rules, no reports of difficulty speaking intelligibly, and Ms. Wilder's report that Plaintiff had no problems talking clearly or communicating. *Id.* In the domains of moving about and manipulating objects, caring for herself, and health and physical well-being, the ALJ found Plaintiff had no limitations, relying on the fact that either there were no problems alleged, there were no negative medical reports, or Ms. Wilder's assessment supporting her conclusion. Tr. 20-23.

In sum, the ALJ relied heavily on Ms. Wilder's assessment of Plaintiff's functioning in concluding that Plaintiff's impairments did not functionally equal the listings. Tr. 17-23. *See* SSR 09-2p, 2009 WL 396032, at *4 (Feb. 18, 2009) ("Evidence from other sources who are not

14

medical sources and who know and have contact with the child can also be very important to our understanding of the severity of a child's impairment(s) and how it affects day-to-day functioning. These sources include parents . . . ."). The undersigned finds that substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled.

III.   Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig*, 76 F.3d at 589; *see also* 42 U.S.C. § 405(g). Therefore, it is hereby recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

November 14, 2014                                              Kaymani D. West
Florence, South Carolina                                       United States Magistrate Judge